## J. C. WELLS AND ANOTHER, ADM'RS v. ABRAHAM GROESBECK AND OTHERS.

Where the defendant propounded to the plaintiff an interrogatory, inquiring directly, if the note sued on was executed for the consideration and purchase money of a certain specified tract of land, the question admitting of a categorical answer, which the duty of the plaintiff required him to make; and he answered thereto, that "he has been informed, that the note was "executed as mentioned in the interrogatory, but has no definite knowledge "upon the subject;" and from another answer, it was shown that he did know what was the consideration; if he decline to state affirmatively, that the note was not given for the land described in the interrogatory, or that he knew nothing about it, the question must be taken for confessed against him; especially, when other circumstances, in proof, tend to establish the same conclusion.

See this case for facts, which establish with sufficient certainty, that the consideration of the note sued on, was the purchase of the tract of land described in the defendant's plea of failure of consideration; and upon which a verdict for the plaintiff, on the note, ought to have been set aside, and a new trial granted, because the verdict was not warranted by the evidence.

In an action on a promissory note, to which the defendant pleaded failure of consideration; that the title to the land, for the purchase of which the note was given, was not in the vendor; and that the true owners had since acquired possession of the land, &c.; the plaintiff asked the court to instruct the jury, that if they believed, from the evidence, that the maker of the note contracted with the vendor, "for the chance of the land," and bought the same upon his own knowledge of the title and location of said land, they should find for the plaintiff; and it appeared from the evidence, that the deed from the vendor to the maker, or purchaser, contained a full warranty of title: *Held*, that the instruction asked was properly refused; and that the evidence offered to sustain the proposition contained in it, ought to have no weight.

In the case stated, it would not be competent to contradict the deed, in a suit for the breach of such warranty, by parol testimony, showing that the grantee had agreed to take the chance of the title.

APPEAL from Navarro. Tried below before the Hon. Charles A. Frazer. The facts are stated in the opinion.

*Barziza* and *Gould*, for appellants.

*R. Q. Mills*, for appellees.

BELL, J.   This suit was instituted by the appellees, against the appellants, as administrators of the estate of one D. R. Mitchell, to recover the amount of a promissory note, for fourteen hundred and seventy-six dollars, executed by said D. R. Mitchell to one John Shea, and endorsed by said John Shea to the appellees.

The note upon which the suit was instituted, is not a negotiable instrument.   The appellants, defendants in the court below, pleaded that the note was given for the purchase money of one third of a league of land, purchased by D. R. Mitchell, in his lifetime, from John Shea; and that the consideration of the note had entirely failed, it having resulted that John Shea never had any title whatever to the land for which the note was given; and that the estate of Mitchell had surrendered the land to persons claiming the same, by superior and unquestionable title.

There was a trial of the cause, at the Spring Term, 1857, which resulted in a verdict for the plaintiffs; the defendants not having established their defence by satisfactory testimony. Upon a motion, by defendants, showing merits, the judge granted a new trial.

Upon the second trial, the defendants attempted to establish that the note sued on was executed by D. R. Mitchell, in consideration of the sale to him, by John Shea, of one third of a league of land, situated on Chambers creek, in Ellis county; that said land did not belong to Mitchell's vendor, John Shea, but had been originally granted to one John Shay, and was the property of persons deriving title from the said John Shay.

The defendants read in evidence, a deed from John Shea to D. R. Mitchell, for fourteen hundred and seventy-six acres of land, on Chambers creek, in Ellis county.   They also interrogated the plaintiffs, in the hope of proving, by them, that the note was given for the land on Chambers creek.   They also introduced a patent from the government to John Shay, for the land on Chambers creek, conveyed by John Shea to D. R. Mitchell; and they proved that D. R. Mitchell had sold the

land, which he purchased from John Shea, to one John Noonan; and that, upon the claim of John H. Herndon, who derived title to the land from John Shay, the real patentee, Noonan had surrendered the land, with the consent of the defendants, and the defendants returned to said Noonan the purchase money paid by him.

The court charged the jury, in substance, that if the note was given for the land described in the deed from John Shea to D. R. Mitchell, and the land did not belong to John Shea, and D. R. Mitchell bought the land, believing that it did belong to his vendor, John Shea, then the plaintiffs could not recover; otherwise, the jury should find for the plaintiffs.

The jury returned a verdict for the plaintiffs, for the principal and interest of the note. The defendants moved for a new trial, on the ground that the verdict was contrary to the evidence. The motion for a new trial was overruled. The error relied on by the appellants, is the overruling of the motion for a new trial.

The only questions in the case, are questions of fact; for, the note not being a negotiable instrument, it follows, that the defendants could set up any defence against a suit by the plaintiffs to collect it, that might have been set up in a suit by the original payee. There is a want of clearness in the evidence introduced by the defendants to sustain their defence; but we are of opinion, that the testimony, when carefully considered, establishes the defence set forth in the pleadings of the defendants.

At first view, it appears to be somewhat uncertain, whether or not the land described in the deed from John Shea to D. R. Mitchell, is the same land patented to John Shay, sold by D. R. Mitchell to John Noonan, and surrendered by Noonan to Herndon. The description in the deed from John Shea to D. R. Mitchell, seems to differ from the description in the patent to John Shay. But, upon scrutiny, it will be seen that the difference is owing to the fact that, when the survey was made for John Shay, there were no adjoining surveys, and a line of

over seventy thousand varas in length was run, to connect Shay's survey with other surveyed lands. When John Shea sold to D. R. Mitchell, the adjoining lands had been surveyed, and Shea's deed referred to the adjoining surveys, for a description of the land. The testimony leaves no doubt that the land described in John Shea's deed to D. R. Mitchell, is the same land patented to John Shay, and afterwards surrendered by Noonan, Mitchell's vendee, to John H. Herndon. And it is also made perfectly clear by the evidence, that John Shea never had any title to the land sold by him to D. R. Mitchell; but, on the contrary, it is clear that the title to said land, is in the assignees of the patentee, John Shay.

The only question in the case, of any difficulty, is, whether or not the note sued on, is shown by the evidence, to have been given for the land described in the deed from John Shea to D. R. Mitchell. The deed from Shea to Mitchell, is dated on the 11th February, 1853; the note is dated 25th February, 1853. The consideration recited in the deed, is nine hundred and eighty four dollars; the note is for fourteen hundred and seventy six dollars. The dates and the amounts, then, would not seem to indicate any connection between the note and the deed, although the facts, that the consideration recited in the deed is precisely two thirds of a dollar per acre for the land, and that the sum for which the note was given is precisely one dollar per acre for the land, are to some extent suggestive, when taken in connection with other circumstances developed by the testimony. But what is of more consequence, is, that the deed from Shea to Mitchell was acknowledged by Shea, before the county clerk of Harris county, on the 26th day of February, 1853, which was the next day after the execution of the note. The record shows that Shea lived in Harris county, and that Mitchell lived in Navarro county. All these facts, however, taken together, would not necessarily connect the note with the deed. The only remaining evidence, on this point, is to be found in the answers of Groesbeck and Rice, two of the plaintiffs, to questions propounded to them by the

defendants.   To a question concerning the consideration of the note, Groesbeck answers, "it was for some land trade, but whether for the property specified," (in the interrogatory) "or not, I do not know."   To another similar question, he answers, "I was not informed of the consideration," (of the note) "particularly, only that it was for some tract of land, sold by Shea to Mitchell."

The following question was propounded to William M. Rice: "Was not the note sued on executed by D. R. Mitchell, and for "the consideration and the purchase money of one third of a "league of land, sold by John Shea, of which said Shea repre-"sented himself to be the owner, and situated on Chambers "creek, in Ellis county?"   Rice answered this interrogatory thus: "I have been informed that said note was executed as "mentioned in the interrogatory, but have no definite know-"ledge upon the subject."   In answer to another interrogatory, Rice said, that "he was not informed of the consideration of "said note, before he and his partners became the owners and "holders of the same; if they had been, they would not have· "traded for it."   We think that these answers make it reason-ably certain, that the note sued on was executed for the pur-chase money of the land described in Shea's deed to Mitchell; and we can only account for the verdict of the jury, on the supposition, that they overlooked portions of the testimony, or were led into the error of supposing that they could not find for the defendants, unless there was proof that the plaintiffs had knowledge of the consideration of the note, before they became the holders of it; for there was much in the interrogatories propounded to the plaintiffs, and in their answers, to present the latter idea to the minds of the jury.   The plaintiff, Rice, says that he has been informed, that the note was given for the purchase money of the land on Chambers creek, in Ellis county.   In another place, he says, that he was not informed of the consideration of the note, before his firm became the owners and holders of it; from which it may be inferred, that he did become informed of the consideration of the note, after

28

his firm became the owners of it; and if he knew, when he answered the interrogatories, that the note was not given for the land described in the interrogatories propounded to him, he could have said so; or, if he had received information, which left the consideration of the note a matter of doubt in his mind, he could have answered that he knew nothing about it. His answers tend very strongly (to say the least) to show that, when he answered, he did know what was the consideration of the note. Having admitted that he had information on the subject, concerning which he was questioned, and having declined to say that he did not know what was the consideration of the note, when it was his duty to answer categorically, we think the question must be taken for confessed against him, especially as other circumstances, in proof, tend to establish the same conclusion.

The plaintiffs asked the court to instruct the jury, that if they believed, from the evidence, that Mitchell contracted with Shea for the chance of the land, and bought the same upon his own knowledge of the title and location of said land, they would find for the plaintiffs. The only testimony which tended, in the slightest degree, to establish the fact that Mitchell had purchased the land at his own risk, as to title, was the testimony of John Noonan, who had purchased the land from Mitchell, and had afterwards surrendered it to Herndon. This witness stated, that "he went to see John Shea, in the city of "Houston, in regard to the land; that Shea told him he had "sold the land to Mitchell; that he did not know that he had "any land there; that Mitchell came to him, and told him that "he had; and that Mitchell bought the chance of the land."

We do not think this testimony can have any weight. The deed, from Shea to Mitchell, contains a full warranty of title. If Mitchell had sued Shea for a breach of the warranty, it would not have been competent for Shea to have contradicted the deed, by parol testimony, showing that Mitchell had agreed to take the chances of the title. We are of opinion, therefore,

that there was no error in refusing to give the instruction asked by the plaintiff's attorney on this point.

But we think that the verdict of the jury was contrary to the evidence, and that a new trial ought to have been granted. It is true, that if the plaintiffs purchased the note, without any knowledge of the consideration, or that there was no consideration, it is a hardship for them to be defeated in the attempt to collect it. But the rule of law, that the purchaser of non-negotiable paper, takes it subject to all equities in favor of the payor, against the original payee, before notice of the assignment, is founded in reasons too strong to permit it to be shaken. All that the courts can do, is, to ascertain the facts of cases which are submitted to them, and to apply the law to the facts. We think the court below erred in overruling the motion for a new trial, on the ground that the verdict was not warranted by the evidence; and for this error, the judgment is reversed, and the cause remanded.

Reversed and remanded.